UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


**SHARON BLACKMON-MALLOY, et al.**

    **PLAINTIFFS,**

    **v.**                              **Civil Action No.:  01-02221 (ES-JF)**


**U.S. CAPITOL POLICE BOARD**

    **DEFENDANT.**


**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**


    **NOW COMES** Plaintiff, Frank Adams, by undersigned counsel, and opposes Defendant's motion for summary judgment. Plaintiff's Opposition is accompanied with a Memorandum of Points and Authorities, pursuant to local rules of this jurisdiction.


/s/

_____
Nathaniel D. Johnson, Esq.
Richard Lloyd Thompson, II, Esq.
*Of Counsel*
201 Centennial Street, Suite A-2
P. O. Box 1857
LaPlata, MD 20646
301-645 – 9103/301-861-0411 (fax)


1

## FACTUAL BACKGROUND

Plaintiff, Frank Adams, has advanced claims in his Amended Complaint; namely, Count XII, Intentional Discrimination; Count XIII, Retaliation; and, Count XIV, Hostile Work Environment. (See Plaintiff's Third Amended Complaint at ¶¶ 76-77,81). In November 2000, Plaintiff applied for the promotion of Lieutenant. (Id., ¶85). During this period, Plaintiff made several well-documented complaints regarding discriminatory treatment at the hands of high-ranking officials. ( Complaint, ¶107). The PRS, "Performance Rating Scale" was administered by Lieutenant Donald Dixon in accordance to relevant policy and procedure. (Plaintiff's Exhibit 1, Performance Review). Plaintiff's PRS was subsequently reduced by Captain Michal Preloh who was the subject of discrimination complaints initiated by Plaintiff. (Plaintiff's Exhibit 2, Letter to Chief Varey). As a result, Plaintiff received a reduced PRS score of 88.75 which lessened his placement within the ranking for the promotion for Lieutenant. (Plaintiff's Exhibit 3, "Rank Ordered Candidate List"). Consequently, Plaintiff was ranked fifth overall out of forty-two candidates during the 2000-2002 promotional cycle for Lieutenant. Id. Although Plaintiff was promoted to the position of Lieutenant on December 2, 2001, the fifth ranking essentially deprives him of consideration for significant economic benefits in the form of seniority and overtime. (Complaint ¶111). Additionally, Plaintiff was often the subject of baseless allegations by white officers which prompted investigations by Internal Affairs. (Plaintiff's Exhibit 4, "Rule of Conduct"). On one occasion, Plaintiff was counseled after white subordinate committed acts of insubordination against him. Id. In 2000, Plaintiff became aware that a black canine was official named by the Defendant as "Huk," a derogatory term used by white officers on Patrol Division to refer to black officers and citizens. (Plaintiff's Exhibit 5, Incidental Book; Plaintiff's Exhibit 6, Plaintiff's Letter to Chief Varey). Additionally, Plaintiff avers that

white officers often referred to black officers and officials as "Gangsters" other whites who maintained good working relationships with black officials and officers as a "FOG" Friend of Gangsters. Additionally, white officers often  referenced Metropolitan Police Department as "Ghetto Police." (Plaintiff's Exhibit 7, "Sergeant Weaver's Letter to Inspector Parisi).

## **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505; See also *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

To escape summary judgment the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson* at 249-50 (citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her

obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citation omitted), aff'd, No. 99-5126, 1999 WL 825425, at *1 (D.C.Cir. Sept.27, 1999).

## ARGUMENT

**Defendant is Not Entitled to Summary Judgment as a Matter of Law With Respect to Plaintiff's Claims of Disparate Treatment, Retaliation and Hostile Work Environment**

A Plaintiff's claims of disparate treatment involving a distinct "employment injury", in the absence of direct evidence of a discriminatory motive, are analyzed for summary judgment purposes under the *McDonnell Douglas* scheme common to discrimination claims.  See *Hawkins v. PepsiCo, Inc.*, 203 F 3d 274, 276 (4th Cir.) cert. denied. 531 U.S. 875, 148 L. Ed. 2d 125, 121 S. Ct. 181, reh'g denied, 531 U.S. 1031, 148 L. Ed. 2d 524, 121 S. Ct. 613 (2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). Thus, once a plaintiff has established a *prima facie* case of discrimination and an employer proffers a non-discriminatory reason for its actions, "the McDonnell Douglas framework -with its presumptions and burdens- disappears, and the sole remaining issue is discrimination vel non. *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 2008 WL 819989, at *3 (D.C.Cir. Mar. 28, 2008) (noting that "the prima facie case is a largely unnecessary sideshow")[1]. Thereafter, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the

---

[1]  It is worth noting, Defendant filed its Motion for Summary Judgment two days' before the D.C. Court of Appeals issued its decision in *Brady v. Livingood*.

actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d 490 C.A.D.C.,2008, at *3.

Plaintiff submits that he can produce sufficient evidence in support of his claims for Intentional Discrimination, Retaliation and, Hostile Work Environment as set forth as follows:

**A.      Internal Investigations, Count XII:**

Plaintiff has asserted a claim for Intentional Discrimination based upon his race, African-American, and color, Black, after Defendant subjected him to frequent and frivolous internal investigations.    (Amended Complaint ¶¶76,77). Plaintiff was investigated for a variety of complaints by white officers. Id. One investigation was prompted after an insubordinate white officer initiated charges against Plaintiff. Plaintiff was instead counseled directly related to this incident**.** (Exhibit 4).

Defendant's motion argues, however, Plaintiff cannot establish he suffered an adverse employment action. (Defendant's Motion at 30: ¶2). Specifically, Defendant cites   *Ginger v. Dist. of Columbia,* Civ. No. 03-2512, 477 F.Supp.2d 41, 52-53 (D.D.C.2007) in support of its argument that investigations are not actionable conduct because they do not rise to the level of adverse actions. Id. Defendant further argues that Plaintiff's counseling is not an adverse employment action. Id.

Moreover, as this Court has held in *Ratigan v. Gonzalez*: 503 F.Supp.2d 56, D.D.C.,2007, "[i]n contrast to *Ginger*, this case has not yet proceeded to discovery, and given the unsettled state of the law after White, this Court will not dismiss plaintiff's allegations regarding monitoring and investigations." See *Ratigan* Id. at 77.

Therefore, and adopting the holding of this Court in *Ratigan,* Defendant's motion for summary judgment to Plaintiff's discrimination claim relating to internal investigations should

be denied. Alternatively, and, again, relying upon *Ratigan*, it would be premature for this Court to grant Defendant's motion on this claim until parties have had the opportunity to engage in discovery to determine if whether Plaintiff suffered a material adverse consequence directly related to the frivolous and myriad investigations launched by Defendant[2].

### C. Reduction in Plaintiff's PRS Score (Count XIII):

Plaintiff's Amended Complaint asserts a retaliation claim based upon the reduction of his PRS Score. (Complaint at ¶85). In order to prevail on a retaliation claim, Plaintiff is required to establish as follows:

1) he engaged in protected behavior;

2) the employer took an action against plaintiff that a reasonable employee would believe was designed to dissuade a reasonable worker engaging in protected activity; and

3) there is a causal link between the adverse action and the protected activity. See *Rochon v. Gonzales*, 438 F.3d 1211, 1219-20 (D.C.Cir.2006).

In the instant action, Plaintiff was presented with a lesser ranking on his PRS Score as a direct result of complaining of discriminatory treatment at the hands of Captain Michael Preloh. (Exhibit 3). Plaintiff has produced indisputable evidence that Captain Preloh's lower evaluation rating was unsubstantiated and inconsistent with departmental policy and procedure. (Exhibit 2).

Moreover, it is undisputed Plaintiff's suffered adverse employment action in the form of significant monetary loss as a direct result of his placement on the rankings and his subsequent loss of seniority which resulted in material adverse consequences in the form of denial of promotional opportunities. *Rochon.*

Plaintiff's retaliation claim relies upon the undisputed fact that his performance was

---

[2] See Federal Rules of Civil Procedure 56(f).

initially reviewed by his immediate supervisor, Lieutenant Donald Dixon, consistent with Defendant's policy. (Exhibit 1). As noted in Dixon's correspondence to Preloh, the reduced PRS score was based upon his [Preloh's]failure to comply with departmental procedures and Preloh's limited working familiarity of Plaintiff for six months which was insufficient to effectively evaluate Plaintiff's performance. (See Plaintiff's Exhibit 8, Lieutenant Dixon's Letter to Chief Rohan). Further, Captain Preloh's assessment of Plaintiff, in part, references an incident that occurred outside of the relevant rating cycle. Id. Plaintiff, therefore, can establish that the adverse PRS score was no more than a pretext for retaliatory conduct administered by Captain Preloh after Plaintiff engaged in protected activity complaining of discriminatory treatment.

Defendant's motion argues that Plaintiff cannot establish an adverse action on this claim, an essential prong of the analysis. (Defendant's Motion at 31:¶1). However, it is well-settled precedent in this Circuit that a negative performance evaluation that is directly related to salary or compensation is an adverse employment action. (See *Brown v. Brody* 199 F.3d 446 C.A.D.C., 1999). Here, Plaintiff's fifth ranking on the promotion lists meets the second prong of *Rochon*. Moreover, Plaintiff submits that his economic benefits meet the reasonable person standard for an adverse action as articulated in the U.S. Supreme Court in *Burlington v. White* 548 U.S. 53, 126 S.Ct. 2405 U.S., 2006,"the employer took an action against plaintiff that a reasonable employee would believe was designed to dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 2417. *White*.

Next, Defendant's motion argues that the top candidate was Fredinal Rogers whom was promoted to Lieutenant during the promotional cycle in question and was ranked first. (Defendant's Motion at 30:¶ 4). Defendant's motion requires Plaintiff to produce more than what is sufficient to establish retaliation. Id. 31: ¶ 5. Here, however, Plaintiff is not required to

allege that he would have been the top candidate. This Circuit only requires a Plaintiff bringing a claim for retaliation to have suffered an adverse employment action after engaging in protected activity and establishes a casual connection between the two. *Rochon*.

Thus, Defendant's argument related to Mr. Rogers' promotion or ranking is immaterial and exceeds the *Rochon* analysis in establishing retaliatory conduct. Accordingly, Defendant's motion for summary judgment should also be denied with respect to this claim.

**C. Racially Insensitive Remarks:**

To establish hostile work environment, a plaintiff must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [their] employment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In the instant action, Plaintiff has asserted that he and other black officers were often subjected to racially insensitive references such as, "Gangsters." (Plaintiff's Amended Complaint at ¶78). Moreover, whites whom associated with black officers were referred to as, "FOG- Friend of Gangsters," and black officers of the Metropolitan Police Department were referred to as the, "Ghetto Police." (Id.) Defendant's motion argues that, "[t]he record does not support these allegations." (Defendant's Motion at 31: ¶2). However, Defendant's argument, at best, is disingenuous because the record of the racially offensive language is well-documented. (Exhibit 7).

Next, with regard to Defendant's decision to name a black canine "Huk," Defendant argues that the dog was named, "Huck," and that it was ultimately renamed "Thunder." (Defendant's Motion at 31: ¶2). Conversely, Plaintiff can establish evidence in support of his contention that Defendant intentionally selected a name for the canine that was meant to degrade black officers. (Exhibit 6). Because there are issues of material fact in dispute regarding

Defendant's non-discriminatory explanation, its motion for summary judgment regarding this claim should also be dismissed and this issue proceeds to discovery.

Lastly, Defendant's motion makes a desperate attempt to persuade this Court to defeat Plaintiff's hostile work environment claim on the premise that, Plaintiff, "has not made any allegations regarding when, where, or who made the derogatory statements." (Defendant's Motion 32:¶1). Again, Defendant's motion is disingenuous because Plaintiff's allegations are well-documented. (Exhibit 7). Thus, Defendant is not entitled to a "Faragher/Ellerth[3] affirmative defense," since it has failed to exercised reasonable care to prevent and promptly correct the harassment.   Plaintiff submits that the totality of the circumstances of the aforementioned incidents rise to the level of a viable hostile work environment claim, and Defendant's motion should be denied.

## **CONCLUSION**

Accordingly, Plaintiff submits that this Court denied Defendant's requested relief.


/s/
_____
Nathaniel D. Johnson, Esq.
Richard Lloyd Thompson, II, Esq.
*Of Counsel*
201 Centennial Street, Suite A-2
P. O. Box 1857
LaPlata, MD 20646
301-645 – 9103/301-861-0411 (fax)

---

[3] Cited from Faragher v. City of Boca Raton, 524 U.S. 775 (1998).